UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMIE D.,

                       Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

19-CV-1226-MJR

DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Jamie D.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is denied and defendant's motion (Dkt. No. 11) is granted.

## BACKGROUND[2]

In February, 2016, plaintiff applied for DIB and SSI alleging disability beginning on June 25, 2015, due to back and neck injuries, loss of feeling in her arms and legs,

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

headaches, hip pain, sleep issues, and an inability to lift, twist, or squat. (Tr. 165-76, 196)[3] Plaintiff's claim was initially denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 96-103, 106-08) Plaintiff appeared and testified at a video hearing held on March 22, 2018, before ALJ Roxanne Fuller. An impartial vocational expert also appeared and testified. (Tr. 39-72)

On June 6, 2018, the ALJ issued an unfavorable decision. (Tr. 16-38) The Appeals Council subsequently denied her request for review on July 26, 2019, making the ALJ's decision the final determination of the Commissioner. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

### I. Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 6)

2

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

5

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of June 25, 2015. (Tr. 21) At step two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine; migraines; obesity; and urinary incontinence. (Tr. 21) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 24) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform sedentary work with the following limitations: occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, or crawl; frequently perform gross manipulation (bilateral reaching, overhead reaching, and handling) and frequently perform fine manipulation with both hands; and occasional exposure to weather, moving mechanical parts, operation of a motor vehicle, and exposure to unprotected heights. (Tr. 25) Proceeding to step four, the ALJ found that plaintiff could not perform her past relevant work as a personal/residential care aide. (Tr. 32) Proceeding to step five, and after considering testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy such as document preparer, addresser, and order clerk. (Tr. 32) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 33)

IV.   *Plaintiff's Challenge*

Plaintiff contends that remand is warranted because the ALJ erroneously formulated the RFC based upon her own lay opinion, specifically with respect to the assessed limitations of reaching, handling, and fingering. (Dkt. No. 9-1 at 8-11; Dkt. No. 12)  The Court disagrees.

While an ALJ considers medical opinions on a plaintiff's functioning, ultimately, the ALJ is tasked with reaching an RFC assessment based on the record as a whole. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). A plaintiff's RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order), and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". *Id.*  However, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings" alone. *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). An exception lies "where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Id.* (internal quotation marks omitted).

In this case the ALJ found that plaintiff was capable of sedentary work with additional limitations, including bilateral frequent gross manipulation (handling), frequent fine manipulation (fingering), and frequent reaching overhead reaching. (Tr. 25)  In formulating the RFC, the ALJ thoroughly discussed the medical evidence demonstrating

7

conservative treatment and general improvement in her condition, full motor strength despite mild sensation loss; daily activities including a return to work and attending college; and plaintiff's testimony regarding her symptoms. (Tr. 25-30)

The ALJ also considered two medical opinions of record. (Tr. 28-30) Consultative examiner Dr. Rita Figueroa assessed a mild limitation with repetitive and prolonged turning neck movements; moderate limitations with repetitive bending, lifting, and carrying; and "mild to prolonged" limitation walking. (Tr. 345) Plaintiff had no limitation with sitting, but she should avoid exposure to dust, smoke, and any respiratory irritants. (Tr. 345) Dr. Figueroa noted some mild loss of sensation in the bilateral hands and feet, but she demonstrated full upper and lower extremity strength and normal grip strength. (Tr. 344-45) The ALJ assigned this opinion "partial weight," to the extent that the exertional and postural limitations suggested by Dr. Figueroa were consistent with the medical evidence. (Tr. 29) Dr. Figueroa did not assess any limitations with reaching or manipulation. Nevertheless, explicitly giving plaintiff the benefit of the doubt, the ALJ imposed manipulative limitations to accommodate any issues plaintiff had with hand paresthesia. (Tr. 31)

The ALJ also noted that treating Nurse Practitioner Hassan Fares' June 2016 statement that plaintiff was "unable to work" was unsupported by the record, which indicated improvement in her condition and conservative treatment. (Tr. 29-30) The ALJ additionally noted that the determination of disability for social security disability benefits is reserved to the Commissioner and any opinion on a claimant's capacity to work is entitled to no special significance. (*Id.*) See 20 C.F.R. §§ 404.1527(d) and 416.927(d).

The ALJ summarized plaintiff's testimony from the administrative hearing. (Tr. 26) Plaintiff, who was 28 years-old at the time of the hearing, told the ALJ that she was a full-time medical administrative college student with an eight-year-old child. (Tr. 42) She was unable to work due to injuries sustained to her neck and lower back from a motor vehicle accident in June, 2015. (Tr. 26) Plaintiff worked part time at the YMCA from October, 2016, to November, 2017. (Tr. 48-50) That job ended because she started an internship and went back to college in January, 2017. (Tr. 50, 62-63) Plaintiff was to graduate college in May, 2018, and she hoped to get a part-time medical billing job. (Tr. 50, 62) While in school, plaintiff indicated that she could get up and leave the room if her neck and back problems required it. (Tr. 52) She missed three weeks of class during the current semester. (Tr. 52)

Plaintiff testified that she and her son lived upstairs from her parents. (Tr. 57) Her mother assisted her with chores, such as performing laundry and cooking when plaintiff had "bad days." (Tr. 26) Plaintiff testified that walking long distances caused burning and pain in her legs and walking or sitting too long bothered her hips. (Tr. 55) She estimated that she could sit up to 1 hour, stand 10 minutes, walk 20 minutes, and lift and carry a gallon of milk. (Tr. 58-59) She had 14-16 bad days per month when she stayed in bed over half of the day. (Tr. 60)

With respect to her symptoms, plaintiff testified that, after her car accident, she continued to experience low back pain and spasms, but rest and ibuprofen helped. (Tr. 54-55, 65-66) She also experienced headaches about three times weekly and migraines once weekly. (Tr. 53) Migraines caused nausea and she stayed in bed for the day. (Tr.

53) Plaintiff stated that her arms fell asleep and then had pain and tingling and she had hand tingling. (Tr. 54) She had leg pain and her legs and feet fell asleep. (Tr. 55)

Plaintiff underwent chiropractic treatment three to four times weekly for almost two years. (Tr. 43) The sessions helped for approximately 30 minutes. (Tr. 44) Lower back epidural injections did not help and physical therapy made the pain worse. (Tr. 45) Botox injections improved her urinary incontinence. (Tr. 45-46) Plaintiff stated that she was restricted from lifting greater than five pounds. (Tr. 45)

Plaintiff avers that "if it is unclear how the ALJ reached the specific findings in an RFC---even if the ALJ engaged in a 'lengthy discussion' of the medical evidence---remand is warranted." (Dkt. No. 9-1 at 9; quoting *Starr v. Saul*, No. 18-CV-241, 2019 WL 3997318, at *3 (W.D.N.Y. Aug. 23, 2019)) Yet in this case the nexus between the assessed RFC and the medical evidence, medical opinions, and plaintiff's subjective statements is clear. The assessed manipulative restrictions within the RFC intended to accommodate for any issues with paresthesia in the bilateral hands were consistent with the following: plaintiff's complaints to treating physicians of radiation, numbness, and paresthesia into the bilateral hands; plaintiff's hearing testimony that she had pain and paresthesia in the upper extremities, and the consultative examiner's finding of "some mild loss of sensation in the bilateral hands and feet, though she demonstrated full strength throughout." (Tr. 26, 27, 28, 31) Accordingly, the ALJ did not rely on her own lay opinion in formulating this portion of the RFC. *See Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018) (rejecting argument that ALJ formed the RFC based on his own assessment of the medical evidence where "each element in the RFC relating to plaintiff's physical limitations corresponds with either plaintiff's subjective

complaints or with an expert medical source statement."); *cf. Starr*, 2019 WL 3997318, at *3 (remanding where the ALJ "simply concluded that the 'above evidence supports the above residual functional capacity,' without explaining how or otherwise connecting any treatment records to the RFC.").

Here, the ALJ's determination was supported by the record as a whole, and plaintiff does not show that she cannot perform the RFC as assessed by the ALJ. *See Davis v. Colvin*, No. 15-CV-6695, 2017 WL 745866, at *12 (W.D.N.Y. Feb. 27, 2017). ("[Plaintiff] has failed to identify any record evidence that is inconsistent with the limitations assessed by the ALJ. Nothing else in the record suggests that [he] was unable to perform sedentary work with the limitations identified by the ALJ. I conclude that the ALJ's RFC assessment was based upon a thorough review of the record and was supported by substantial record evidence; accordingly, remand is not warranted.").

In sum, the ALJ's decision is supported by substantial evidence and free of legal error.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:   November 20, 2020
         Buffalo, New York

11

_____
MICHAEL J. ROEMER
United States Magistrate Judge